IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| NEO WIRELESS, LLC, | § § § § § § |
| *Plaintiff*, | § CIVIL ACTION NO. 2:22-cv-00095 |
| v. | § § JURY TRIAL DEMANDED |
| TESLA INC., | § § |
| *Defendants*. | § § § § |

**PLAINTIFF NEO WIRELESS, LLC'S
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Neo Wireless, LLC ("Neo Wireless," "Neo," or "Plaintiff"), brings this action for patent infringement under 35 U.S.C. § 271 against Defendant Tesla, Inc. ("Tesla" or "Defendant"). Plaintiff alleges, based upon its own personal knowledge with respect to its own actions and based upon information and belief with respect to all others' actions, as follows:

**THE PARTIES**

1. Plaintiff Neo Wireless, LLC is a Delaware corporation with its principal place of business located in Wayne, Pennsylvania.

2. On information and belief, Telsa, Inc. is a company organized and existing under the laws of Delaware, with its principal place of business at 3500 Deer Creek Road, Palo Alto, California. Tesla may do business with the fictitious name Tesla Motors, Inc. Tesla may be served through its registered agent, CT Corporation, at 1999 Bryan Street, Suite 900, Dallas, Texas, 75201.

1

**JURISDICTION AND VENUE**

3. This action arises under the Patent Act, 35 U.S.C. § 1 *et seq*.

4. Subject matter jurisdiction is proper in this Court under 28 U.S.C. §§ 1331, 1332 and 1338(a).

5. The amount in controversy exceeds $75,000.

6. Venue is proper under 28 U.S.C. § 1400(b) against Tesla because, on information and belief, Tesla (1) has committed acts of infringement in this District and (2) has a regular and established place of business in this District.

7. This Court has personal jurisdiction over Tesla. Tesla has continuous and systematic business contacts with the State of Texas. Tesla, directly or through subsidiaries or intermediaries (including distributors, retailers, and others), conducts its business extensively throughout Texas, by shipping, distributing, offering for sale, selling, and advertising (including the provision of interactive web pages) its vehicles and services in the State of Texas and the Eastern District of Texas.

8. Tesla, directly and through subsidiaries or intermediaries (including distributors, retailers, and others), has purposefully and voluntarily placed its infringing vehicles and services into this District and into the stream of commerce with the intention and expectation that they will be purchased and used as designed by consumers in this District. Tesla has offered and sold and continues to offer and sell these infringing vehicles and services in this District, including at physical Tesla stores located within this District.

9. These infringing products and/or services have been and continue to be made, used, sold, offered for sale, purchased, and/or imported by customers and/or consumers in the Eastern District of Texas.

10. Tesla occupies several permanent, physical places within this District from which Tesla carries out its business. For example, Tesla has physical gallery/stores in the following locations in this District: (1) 5800 Democracy Drive, Plano, TX 75024 ("Plano-Democracy Drive"); (2) 7500 Windrose Avenue Space B185, Plano TX 75024 ("Plano-Legacy West"); and (3) 3408 S SW Loop 323, Tyler, TX 75701 ("Tyler Site"). Tesla conducts business from these locations and has employees who work at these Tesla locations in this District. For example, on information and belief, Tesla's Plano-Democracy Drive and Tyler sites provide both sales and services. On further information and belief, Tesla operates a sales gallery at the Plano-Legacy West site.

11. As another example of permanent, physical places within this District from which Tesla carries out its business, Tesla has a number of Supercharger stations in this District, including at least: (1) Texarkana Supercharger, 3101 Mall Drive Texarkana, TX 75503; (2) Sulphur Springs Supercharger, 300 W Tomlinson Street Sulphur Springs, TX 75482; (3) Lindale Supercharger, 17044 I-20 Lindale, TX 75771; (4) Nacogdoches Supercharger, 2615 NW Stallings Dr Nacogdoches, TX 75964; (5) Plano, TX Supercharger, 7161 Bishop Road, Plano TX 75024; and (6) Denison, TX Supercharger, 4300 TX-91, Denison, TX 75020. These Supercharger stations have commercial signage identifying the location as a regular and established place of Tesla's business and are closely monitored and serviced by Tesla Service Technicians.

12. As a further example of permanent physical places within this District from which Tesla carries out its business, Tesla maintains multiple destination charger stations in this District. Upon information and belief, these destination charger stations have commercial

signage identifying the location as a regular and established place of Tesla's business, and Tesla provides assistance with installation and charging hardware for these destination charger stations.

13. On information and belief, Tesla monitors and controls supercharging or destination charging and sends notifications when charging is complete with the Tesla app. On information and belief, the monitoring and controlling of charging and the transmission of notification messages are conducted over cellular networks.

14. Defendants have placed the Accused Products into the stream of commerce by selling and/or offering to sell the Accused Products in the Eastern District of Texas, shipping Accused Products into the Eastern District of Texas, and/or shipping Accused Products knowing that those products would be shipped into the Eastern District of Texas.

## THE ASSERTED PATENTS

### I. The '366 Patent

15. On June 18, 2013, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 8,467,366 ("the '366 patent"), entitled "Methods and Apparatus for Random Access in Multi-Carrier Communication Systems." A copy of the '366 patent is attached as Exhibit 1.

16. The '366 patent issued from U.S. Patent Application 13/205,579, which was filed by Neocific Inc. on August 8, 2011 and was assigned from the inventors to Waltical Solutions, Inc. on April 8, 2005. The application was later assigned from Waltical Solutions, Inc. to Neocific, Inc. on December 14, 2005. The now-issued '366 patent was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

17. The '366 patent is valid and enforceable.

### II. The '908 Patent

18. On April 17, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,833,908 ("the '908 patent"), entitled "Channel Probing Signal for a Broadband Communication System." A copy of the '908 patent is attached as Exhibit 2.

19. The '908 patent issued from U.S. Patent Application 16/902,740, which was filed on June 16, 2020 by Neo Wireless, LLC on June 16, 2020 on behalf of the inventors.

20. The '908 patent is valid and enforceable.

### III.  The '941 Patent

21. On September 11, 2018, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,075,941 ("the '941 patent"), entitled "Methods and Apparatus for Multi-Carrier Communications with Adaptive Transmission and Feedback." A copy of the '941 patent is attached as Exhibit 3.

22. The '941 patent issued from U.S. Patent Application 15/082,878, which was filed by Neocific, Inc. on March 28, 2016. The now-issued '941 patent was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

23. The '941 patent is valid and enforceable.

### IV.  The '450 Patent

24. On October 15, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,447,450 ("the '450 patent"), entitled "Method and System for Multi-Carrier Packet Communication with Reduced Overhead." A copy of the '450 patent is attached as Exhibit 4.

25. The '450 patent issued from U.S. Patent Application 15/676,421, which was filed by Neocific, Inc. on August 14, 2017. The now-issued '450 patent was later assigned from

Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

26. The '450 patent is valid and enforceable.

**V.    The '512 Patent**

27. On March 30, 2021, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,965,512 ("the '512 patent"), entitled "Method and Apparatus Using Cell-Specific and Common Pilot Subcarriers in multi-Carrier, Multi Cell Wireless Communication Networks." A copy of the '512 patent is attached as Exhibit 5.

28. The '512 patent issued from U.S. Patent Application 17/012,813, which was filed by Neo Wireless on September 4, 2020.

29. The '512 patent is valid and enforceable.

**VI.    The '302 Patent**

30. On September 8, 2020, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,771,302 ("the '302 patent"), entitled "Channel Probing Signal for a Broadband Communication System." A copy of the '302 patent is attached as Exhibit 6.

31. The '302 patent issued from U.S. Patent Application 15/953,950, which was filed on April 16, 2019 and was assigned from Neocific, Inc. to CFIP NCF LLC on November 22, 2019 before it was assigned to Neo Wireless LLC on January 23, 2020.

32. The '302 patent is valid and enforceable.

33. Neo Wireless owns all rights, title, and interest in and to each of the '366, '908, '941, '450, '512, and '302 patents (the "Patents-in-Suit" or "Asserted Patents") and possesses all rights of recovery.

**FACTUAL ALLEGATIONS**

34. Inventor Xiaodong (Alex) Li, Ph.D. founded Neocific Inc. in the early 2000s to design, develop, and implement a new wireless communication system. He and his co-inventors had extensive experience with wireless communications systems, including the development of the Wi-Max standards, and a deep understanding of the flaws in existing systems at the time. The inventors saw an opportunity to create a new wireless communication system meant to address those flaws while incorporating cutting-edge Orthogonal Frequency-Division Multiple Access (OFDMA) based technologies, and, starting in the 2004-2005 timeframe, they filed patents on the work.

35. Dr. Li served as the President and Founder of Neocific. Dr. Li obtained his Ph.D. in electrical engineering from the University of Washington, his M.S. from Shanghai Jiao Tong University, and his B.S. from Tsinghua University. Dr. Li has authored more than 30 journal and conference papers in wireless communications, video coding, and networking. He has been granted more than 100 U.S. and foreign patents.

36. Dr. Titus Lo, Ph.D. is a founding employee of Neocific. Dr. Lo obtained his Ph.D. in electrical engineering from McMaster University and his B.S. from the University of British Columbia. Dr. Lo has authored more than 30 technical papers in international peer-reviewed journals and presented more than 50 times at industry events. He has been granted more than 100 U.S. and foreign patents.

37. The inventions in the Patents-in-Suit relate to various improvements in OFDMA networks and corresponding user equipment, and those improvements have since been incorporated into the 3GPP standards for 4G/LTE and 5G/NR networks.

38. Neo Wireless owns all substantial right, title, and interest in the Patents-in-Suit, and holds the right to sue and recover damages for infringement thereof.

39. David Loo is the CEO of Plaintiff Neo Wireless. Mr. Loo works and resides in Wayne, Pennsylvania. Mr. Loo has over a decade of experience as a licensing executive and patent attorney with a well-established track record of assisting companies, inventors and patent holders to ensure they are fairly compensated for their inventions.

40. The wireless communication industry has been developing rapidly since Bell Labs developed the First Generation of modern commercial cellular technology in 1984. Multiple wireless communication technologies designated by generations emerged and brought new capacities to people all over the world. In 2008, 3GPP created and finalized the LTE standards as an upgrade to 3G. The cellular industry recognized its major benefits, and virtually all cellular device manufacturers have embraced LTE as the next generation of commercial cellular technology and developed phones, hotspots, and other cellular-connectivity devices to utilize the 4G LTE technology.

41. In recent years, automakers have implemented this cellular communications technology into their vehicles. Telematics systems first debuted in 1996 through OnStar using analog cell networks, which allowed consumers to receive remote diagnostics, remotely unlock vehicles, and receive emergency services after a collision. In 2007, 3G technology emerged, bringing greater speed and capacity to these features and allowing automakers to design more advanced functions.

42. When the technology emerged, Tesla began implementing the newest 4G LTE cellular technology into many of its products. 4G LTE technology provided for 10 times faster data speeds, increased responsiveness, and the ability to support voice and data connections simultaneously. 4G LTE connection further provides consumers with a variety of in-vehicle wi-fi hot spots and vast entertainment options. As a result, Tesla could better support a variety of

wireless features including SOS emergency assistance, automatic collision notification, stolen vehicle tracking, roadside assistance, remote start, remote climate control adjustment, navigation map updates, live traffic data, and wi-fi hotspot, etc.

43. Tesla provides 4G LTE connectivity in its various products at least via its Premium Connectivity system integrated into its vehicles.

44. Building on these 4G LTE capabilities, Tesla developed and utilizes the Tesla App that enables its customers to interact with their vehicles from their cellular devices, using the cellular connectivity of the vehicles. Features on the Tesla App include accessing climate controls, understanding charge stats, setting the charge limit, viewing charge history, and locking and unlocking the vehicle.

45. Tesla models that implement 4G/LTE communications—including but not limited to the Model S, Model Y, Model 3, and Model X—as well as those that may in the future implement 4G/LTE or 5G/NR capabilities are collectively referred to herein as the "Accused Products."

46. As described further below, the Asserted Patents read onto portions of the LTE or 4G/5G standards, which Tesla implements in its Accused Products.

47. Tesla does not have any rights to the Patents-in-Suit.

48. Neo Wireless has complied with 35 U.S.C. § 287. Neo Wireless does not make, offer for sale, or sell within the United States any patented article under the Asserted Patents. Additionally, to the extent it was necessary, Neo Wireless provided Tesla received with actual notice of its infringement prior to the filing of this lawsuit, or at a minimum by the filing of this Complaint.

49. In the interest of providing detailed averments of infringement, Neo Wireless has identified below at least one claim per patent to demonstrate infringement. However, the selection of claims should not be considered limiting, and additional claims of the Patents-in-Suit (including method, system, and apparatus claims) that are infringed by Tesla will be disclosed in compliance with the Court's rules related to infringement contentions.

## TESLA'S ACTS OF PATENT INFRINGEMENT

50. Neo Wireless incorporates by reference the preceding paragraphs as if fully set forth herein.

51. As set forth below, Tesla's Accused Products incorporate, without any license from Neo Wireless, 4G/LTE and/or 5G/NR technology protected by patents owned by Neo Wireless. Neo Wireless respectfully seeks relief from this Court for Tesla's infringement.

52. Tesla has directly infringed, and continues to directly infringe, the Asserted Patents under 35 U.S.C. § 271(a) by making, using, selling and/or offering to sell, in this District and elsewhere in the United States, and/or importing into this District and elsewhere in the United States, one or more of Tesla's Accused Products, that is, certain infringing vehicles outfitted with instrumentalities that infringe the Asserted Patents, as further described in detail in Counts I-VI *infra*.

53. Tesla has indirectly infringed the Asserted Patents under 35 U.S.C. § 271(b) by inducing infringement by others, such as its subsidiaries, dealerships, distributors, retailers, and end-user customers, by, for example, implementing the infringing features in its cellular-capable products, encouraging its users to take advantage of LTE and/or NR features within the United States, and/or instructing, dictating, or training its dealerships and customers to use the infringing features.

54. Similarly, Tesla's advertising, sales, design, development, and/or technical materials related to the 3GPP LTE/4G and/or 5G/NR standards associated with the Accused Products contained and continue to contain instructions, directions, suggestions, and/or invitations that invite, entice, lead on, influence, encourage, prevail on, move by persuasion, and/or cause its subsidiaries, distributors, retailers, dealerships, customers, and the public to directly infringe at least one claim of each of the Patents-in-Suit, either literally or under the doctrine of equivalents.

55. Tesla took the above actions intending to cause infringing acts by others.

56. Tesla received actual notice of its infringement of the Asserted Patents as early as December 1, 2021 and at least as early as the date of service of this Complaint. Therefore, Tesla was or is now aware of the Asserted Patents or has willfully blinded itself as to the existence of the Asserted Patents and the Accused Products' infringement thereof.

57. Further, Tesla has made, used, sold, offered to sell, imported and/or encouraged the making, using, selling, offering to sell, or importing of Tesla's Accused Products despite knowing of an objectively high likelihood that its actions constituted infringement of the Asserted Patents at all times relevant to this suit. Alternatively, Tesla subjectively believed there was a high probability that others would infringe the Asserted Patents but took deliberate steps to avoid confirming that it was actively inducing infringement by others.

58. For the reasons described above, Tesla's infringement of the Asserted Patents has been willful.

59. Tesla's acts of infringement have caused damage to Neo Wireless. Neo Wireless is entitled to recover from Tesla the damages incurred by Neo Wireless as a result of Tesla's wrongful acts.

**COUNT ONE: INFRINGEMENT OF THE '366 PATENT**

60. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

61. As described above, Tesla has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

62. Each of Tesla's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 1 of the '366 patent. *See* Exhibit 7.

63. Tesla's Accused Products therefore meet at least one claim of the '366 patent.

64. To the extent that Tesla releases any new version of Tesla's Accused Products, such instrumentalities will meet the claims of the '366 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to Tesla's current infringement described above.

65. Neo Wireless has been damaged and continues to be damaged by Tesla's infringement of the '366 patent.

**COUNT TWO: INFRINGEMENT OF THE '908 PATENT**

66. Neo Wireless incorporates the allegations of the foregoing paragraphs as if fully restated herein.

67. As described above, Tesla has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

68. Each of Tesla's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 11 of the '908 patent. *See* Exhibit 8.

69. Tesla's Accused Products therefore meet at least one claim of the '908 patent.

70. To the extent that Tesla releases any new version of Tesla's Accused Products, such instrumentalities will meet the claims of the '908 patent and infringe under 35 U.S.C. § 271(a)-(b) in ways analogous to Tesla's current infringement described above.

71. Neo Wireless has been damaged and continues to be damaged by Tesla's infringement of the '908 patent.

### COUNT THREE: INFRINGEMENT OF THE '941 PATENT

72. Neo Wireless incorporates the allegations of the foregoing paragraphs as if fully restated herein.

73. As described above, Tesla has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

74. Each of Tesla's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 13 of the '941 patent. *See* Exhibit 9.

75. Tesla's Accused Products therefore meet at least one claim of the '941 patent.

76. To the extent that Tesla releases any new version of Tesla's Accused Products, such instrumentalities will meet the claims of the '941 patent and infringe under 35 U.S.C. § 271(a)-(b) in ways analogous to Tesla's current infringement described above.

77. Neo Wireless has been damaged and continues to be damaged by Tesla's infringement of the '941 patent.

### COUNT FOUR: INFRINGEMENT OF THE '450 PATENT

78. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

79. As described above, Tesla has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

80. Each of Tesla's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 7 of the '450 patent. *See* Exhibit 10.

81. Tesla's Accused Products therefore meet at least one claim of the '450 patent.

82. To the extent that Tesla releases any new version of Tesla's Accused Products, such instrumentalities will meet the claims of the '450 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to Tesla's current infringement described above.

83. Neo Wireless has been damaged and continues to be damaged by Tesla's infringement of the '450 patent.

## COUNT FIVE: INFRINGEMENT OF THE '512 PATENT

84. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

85. As described above, Tesla has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

86. Each of Tesla's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 15 of the '512 patent. *See* Exhibit 11.

87. Tesla's Accused Products therefore meet at least one claim of the '512 patent.

88. To the extent that Tesla releases any new version of Tesla's Accused Products, such instrumentalities will meet the claims of the '512 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to Tesla's current infringement described above.

89. Neo Wireless has been damaged and continues to be damaged by Tesla's infringement of the '512 patent.

## COUNT SIX: INFRINGEMENT OF THE '302 PATENT

90. Plaintiff incorporates the allegations of all of the foregoing paragraphs as if fully restated herein.

91. As described above, Tesla has infringed and continues to infringe the Asserted Patents by implementing and using 4G/LTE and/or 5G/NR cellular functionality in the Accused Products, and performing the acts of infringement described above.

92. Each of Tesla's Accused Products implements the portions of the 3GPP LTE standard specification that read on at least claim 23 of the '302 patent. *See* Exhibit 12.

93. Tesla's Accused Products therefore meet at least one claim of the '302 patent.

94. To the extent that Tesla releases any new version of Tesla's Accused Products, such instrumentalities will meet the claims of the '302 patent and infringe under 35 U.S.C. § 271(a)–(b) in ways analogous to Tesla's current infringement described above.

95. Neo Wireless has been damaged and continues to be damaged by Tesla's infringement of the '302 patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the following relief:

a. a judgment in favor of Plaintiff that Tesla has infringed, either literally and/or under the doctrine of equivalents, the Asserted Patents;

b. a judgment that Tesla's infringement has been and is willful;

c. a judgment and order requiring Tesla to pay Plaintiff its damages, costs, expenses, and any enhanced damages to which Plaintiff is entitled for Tesla's infringement;

    d.  a judgment and order requiring Tesla to provide an accounting and to pay supplemental damages to Plaintiff, including without limitation, pre-judgment and post-judgment interest;

    e.  a judgment and order requiring Tesla to pay ongoing royalties;

    f.  a judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding Plaintiff its reasonable attorney fees against Tesla; and

    g.  any and all other relief as the Court may deem appropriate and just under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Plaintiff hereby demands trial by jury on all claims and issues so triable.

DATED: March 29, 2022

Respectfully submitted,

*/s/ Jason D. Cassady*
Bradley W. Caldwell
Texas State Bar No. 24040630
Email: bcaldwell@caldwellcc.com
Jason D. Cassady
Texas State Bar No. 24045625
Email: jcassady@caldwellcc.com
John Austin Curry
Texas State Bar No. 24059636
Email: acurry@caldwellcc.com
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facsimile: (214) 888-4849

T. John Ward, Jr.
Texas State Bar No. 00794818
Claire Abernathy Henry
Texas State Bar No. 24053063

16

Andrea L. Fair
Texas State Bar No. 24078488
**WARD, SMITH, & HILL PLLC**
1507 Bill Owens Parkway
Longview, Texas 75604
(903) 757-6400
(903) 757-2323 (fax)
jw@wsfirm.com
claire@wsfirm.com
andrea@wsfirm.com

**ATTORNEYS FOR NEO WIRELESS, LLC**